IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BUCK'S, INC., a Nebraska corporation, ) | 8:08CV519 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| BUC-EE'S, LTD., a Texas limited liability ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant Buc-ee's, Ltd.'s ("Buc-ee's") motion to dismiss, Filing No. 19. In its motion, Buc-ee's asserts that the plaintiff, Buck's Inc. ("Buck's"), has failed to demonstrate that this court has personal jurisdiction over Buc-ee's, and that Buck's action should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), in addition to 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim upon which relief can be granted. Filing No. 19. Upon review of the record and applicable law, the court concludes that Buck's has demonstrated that Buc-ee's has sufficient minimum contacts with this forum to satisfy constitutional requirements of due process, that venue is proper here in Nebraska, and finally, that the plaintiff has sufficiently pled a claim upon which relief can be granted. Consequently, the court denies Buc-ee's motion to dismiss, Filing No. 19.

**FACTUAL BACKGROUND**

On December 2, 2008, Buck's brought this action in this court asserting a claim against Buc-ee's for unfair competition, a claim against Buc-ee's for violations of the Nebraska Uniform Deceptive Trade Practice Act, Neb. Rev. Stat. §§ 87-301 - 87-306, and

a request for declaratory judgment to enjoin Buc-ee's from using the BUC-EE's trademark outside the state of Texas. *See* Filing No. 1.

The plaintiff's complaint alleges that the plaintiff, "Buck['s] is a Nebraska corporation that maintains its principal place of business at 4973 Dodge Street, Omaha, Nebraska 68132. Buck[']s operates a chain of retail stores featuring convenience store items and gasoline that has expanded to approximately 200 locations located throughout the states of Nebraska, Iowa, Missouri, Illinois and Kansas. Buck[']s is actively seeking to expand into the state of Florida." Filing No. 1 at ¶ 2.

The plaintiff asserts that the defendant, Buc-ee's, "is a limited liability company organized under the laws of the state of Texas and maintains its principal place of business at 327 FM 2004, Lake Jackson, Texas 77566. Upon information and belief, all of the members of defendant are residents and citizens of a state other than the state of Nebraska. Upon information and belief, defendant is engaged in the business of retail store services featuring convenience store items and gasoline in a limited geographic territory in a southern portion of the state of Texas under the trademark BUC-EE'S." Filing No. 1 at ¶ 4.

In its brief in support of its motion to dismiss, Buc-ee's submits facts, as set out in the declaration of Arch Applin, III, the president of Buc-ee's. *See* Declaration of Arch Applin, III ("Applin Dec."), Filing No. 21. Specifically, Applin declares that Buc-ee's has its principal place of business in Texas, and has never had a place of business in Nebraska, nor has Buc-ee's ever been registered to conduct any business in Nebraska. Applin Dec. at ¶ 4-5, Filing No. 21. Buc-ee's has never "transacted or solicited any business in Nebraska, either directly or through a distributor." Applin Dec. at ¶ 5, Filing No. 21.

2

Buc-ee's further asserts that it has "never contracted to supply services, goods or things in or to Nebraska" and "has never caused tortious injury by an act or omission in Nebraska." Applin Dec. at ¶¶ 6-7, Filing No. 21.

Buc-ee's "has never advertised in Nebraska and has never directed advertising to residents of Nebraska." Applin Dec. at ¶ 8, Filing No. 21. Buc-ee's does not maintain a Nebraska office and has never "sent any officers, directors, managers, staff members, employees, or agents to Nebraska for any business purpose." Applin Dec. at ¶ 13, Filing No. 21. Concerning its Web site, www.buc-ees.com, Buc-ee's asserts that it maintains a "passive website that provides general information about Buc-ee's locations" in Texas. Applin Dec. at ¶ 15, Filing No. 21. Finally, concerning its interactions with Buck's, Buc-ee's states that it "has never had any dealings or communications of any kind with Buck's [o]ther than through the parties' respective outside counsel in connection with Opposition No. 9117801 pending before the United States Patent and Trademark Office [("USPTO")] Trademark Trial and Appeal Board ("TTAB") and this case." Applin Dec. at ¶ 20, Filing No. 21.

In its complaint, the plaintiff alleges that it "is the owner of United States Trademark Application Serial No. 76/653,211 for the trademark BUCKY'S filed with the United States Patent and Trademark Office on January 4, 2006, and published for opposition on February 13, 2007, for use on retail store services featuring convenience store items and gasoline." Filing No. 1 at ¶ 13. Buck's asserts that the defendant, Buc-ee's, "filed United States Trademark Application Serial No. 78/853,252 for the trademark BUC-EE'S with the United States Patent and Trademark Office on April 4, 2006, for use on retail store services featuring convenience store items and gasoline." Filing No. 1 at ¶ 14.

On June 13, 2007, Buc-ee's filed Opposition No. 91177801 with the TTAB,[1] opposing the plaintiff's Trademark Application Serial No. 76/653,211. Filing No. 1 at ¶ 15. In its complaint, the plaintiff contends that in Buc-ee's opposition to the plaintiff's application to register its trademark before the TTAB, Buc-ee's has "falsely alleged that the federal registration sought by Buck[']s will falsely suggest a connection between Buck[']'s and Defendant." Thus, the plaintiff asserts that Buc-ee's actions in this manner exemplify how Buc-ee's has "intentionally and willfully sought to impede Buck[']s freedom to operate its business under its well-established BUCKY'S trademark both within the state of Nebraska, as well as in other states in the United States." Filing No. 1 at ¶¶ 7 & 15.

Specifically, the plaintiff alleges that the defendant has falsely claimed to the TTAB that: 1) the defendant plans to expand its use of the BUC-EE's trademark outside the state of Texas; 2) the defendant's rights in the BUC-EE's trademark are superior to Buck's rights in its BUCKY'S trademark; 3) the defendant's rights in the BUC-EE's trademark extend outside the state of Texas; 4) Buck's rights in the BUCKY'S trademark are limited to Nebraska, Iowa, Missouri, and Illinois; and finally, that the defendant 5) "has falsely claimed that it owns all right, title and interest in and to the trademark BUC-EE'S in all geographic areas in which Buck[']s had not used the BUCKY'S trademark prior to April 4, 2006, and has further claimed that Buck[']s is therefore prohibited from expanding its use of the BUCKY'S trademark into those geographic areas." Filing No. 1 at ¶¶ 19-23. The

---

[1] The TTAB is an administrative tribunal of the USPTO with jurisdiction over inter partes challenges to the registration of trademarks. *See* 15 U.S.C. § 1067(a). An inter partes proceeding before the TTAB is an adversarial action between parties regarding the registrability of a proposed trademark. An inter partes proceeding can take the form of an opposition proceeding, *see* 15 U.S.C. § 1063; a cancellation proceeding, *see* 15 U.S.C. § 1064; an interference proceeding, *see* 15 U.S.C. § 1066; or a concurrent use proceeding, *see* 37 C.F.R. § 2.42 (2006). As an administrative tribunal of limited jurisdiction, the TTAB is empowered only to decide whether a given trademark is registrable. *See* 15 U.S.C. § 1068.

plaintiff asserts that Buc-ee's should have known that these false claims to the TTAB would cause harm to Buck's in all states where Buck's operates its business, including the state of Nebraska.  Filing No. 1 at ¶ 28.

Following the plaintiff's filing of the present case in the U.S. District Court for the District of Nebraska on December 2, 2008, the USPTO granted Buck's motion to suspend the proceedings before the TTAB regarding Buck's trademark application, pending the outcome of this case.  Wunder Declaration ("Wunder Dec."), Filing No. 21 at ¶ 6; Filing No. 24 at 4.  On February 2, 2009, the defendant filed the instant motion to dismiss (Filing No. 19), arguing that the plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, pursuant to 12(b)(3) for improper venue, and pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003).  The court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor." *Id.*  To withstand Buc-ee's motion under Fed. R. Civ. P. 12(b)(2), Buck's "must state sufficient facts in the complaint to support a reasonable inference that [Buc-ee's] may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  Buck's prima facie case "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotations and

5

citations omitted). "While it is true that the plaintiff bears the ultimate burden of proof on this issue, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. —, —, 127 S. Ct. 1955, 1964 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* — U.S. —, —, 127 S. Ct. 2197, 2200 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at —, 127 S. Ct. at 1964). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 550 U.S. at —, 127 S. Ct. at 1965.

When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Id.* "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Id*. In other words, "the complaint must plead enough facts to state a claim for relief that is plausible." *Id.* at 1974. Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *See id*. at 1966; *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the

6

discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Bell Atlantic,* 550 U.S. at —, 127 S. Ct. at 1966.

## DISCUSSION

For the reasons discussed in greater detail below, the court finds that the plaintiff has satisfied its prima facie burden in establishing specific personal jurisdiction over the defendant and has alleged sufficient facts in pleading its claims against the defendant. Further, the court concludes that venue is proper in Nebraska. The defendant's motion to dismiss, therefore, is denied.

### I.      Personal Jurisdiction

Personal jurisdiction over a defendant must satisfy the requirements of the forum state's long-arm statue and of due process. *Dever*, 380 F.3d at 1073. Nebraska's long-arm statute allows this court to exercise personal jurisdiction over a person who: (1) transacts any business in the state; (2) contracts to supply services or things in the state; (3) causes tortious injury by an act or omission in the state; and (4) causes tortious injury in the state by an act or omission outside the state if the person regularly does or solicits business in the state. *See* Neb. Rev. Stat. § 25-536(a)-(d). Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the issue before this court is whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001).

Due process requires that a defendant have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310,

316 (1945); *Burger King Corp. v. Rudzewicz,* 471 U.S. 475 (1985). "Minimum contacts must exist at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro,* 340 F.3d at 562; *Clune v. Alimak Ab,* 233 F.3d 538, 544 n.8 (8th Cir. 2000). The minimum contacts must be such that "the defendant purposely avails itself of the privilege of conducting activities within the forum state and it reasonably anticipates being haled into court there." *Burger King,* 471 U.S. at 475; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In evaluating whether a defendant's contacts in the forum state satisfy due process, a court considers five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Miller*, 528 F.3d at 1091 (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994)).

"With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction." *Id.*; *Steinbuch,* 518 F.3d at 586 ("The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-415 (1984))). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Steinbuch,* 518 F.3d at 586. "The plaintiff must make a prima facie showing, however, that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.' *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984).

8

Specific jurisdiction occurs when "the defendant has purposefully directed its activities at residents of the forum state" and litigation results from alleged injuries arising out of or relating to those activities. *Id*. The defendant must reasonably anticipate being haled into court in a particular forum where its intentional and allegedly tortious actions were aimed and where the injured party receives the brunt of the injury resulting from the conduct. *Calder v. Jones*, 465 U.S. 783, 789-790 (1984). The defendant must know that its actions could have the potential to cause a devastating impact. *Id*.

The plaintiff does not claim that this court has general personal jurisdiction over the defendant. Filing No. 24 at 7. The court, therefore, will only address the question of whether Buck's has successfully established a prima facie case of *specific* personal jurisdiction over Buc-ee's. In considering the question of specific personal jurisdiction, the court concludes that there is sufficient evidence to indicate that Buc-ee's has intended to direct its alleged activities to the forum state and, therefore, Buc-ee's should be expected to be haled into court in Nebraska.

In support of its argument for a finding of specific personal jurisdiction over the defendant, the plaintiff argues that Buc-ee's actions are similar to the defendant's actions in *Calder v. Jones*, where the Supreme Court found personal jurisdiction because the circumstances of the case warranted an inference that the defendant intended to direct its activities at the state of California. *See Calder,* 465 U.S. 783, 788-89 (1984). The circumstances surrounding Buc-ee's submission of an opposition to Buck's trademark application before the TTAB are substantially similar to the circumstances in *Calder*.

The Court in *Calder* found that the defendants' intent to direct its activities to the forum state could be inferred from the defendants' knowledge that (1) the article it

9

published would have a "potentially devastating impact" on the plaintiff, and (2) the "brunt" of that injury would be felt in California, where the publication had its largest circulation. *Id.* ("In sum, California is the focal point both of the story and of the harm suffered. . . . [Defendants] knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation."). The Eighth Circuit Court of Appeals has adopted the Supreme Court's analysis in *Calder* and has reasoned that "[t]he Supreme Court . . . approved an 'effects' test that allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 -1391 (8th Cir. 1991) (internal quotations and citations omitted).

In applying the *Dakota* court's analysis, this court finds that Buc-ee's actions in filing its opposition before the TTAB were done for the "very purpose" of having "consequences felt in the forum state." *Id.* In its complaint, the plaintiff has asserted that Buc-ee's filed an opposition pursuant to 15 U.S.C. § 1063, based on false allegations, in an attempt to prevent the plaintiff from obtaining its own trademark. As the *Dakota* court noted, the Supreme Court inferred the defendant's intent to direct its activities at the forum state because the defendant, a newspaper, "knew that the brunt of injury would be suffered in the state where the plaintiff lived and where the newspaper had its largest circulation." *Dakota*, 946 F.2d at 1391 (citing *Calder*, 465 U.S. at 789-90). Likewise, when Buc-ee's filed its allegedly fraudulent opposition before the TTAB, Buc-ee's knew the brunt of the injury would be suffered in Nebraska, since Nebraska is the state where the plaintiff conducts the majority of its business.

Further, the court finds personal jurisdiction is appropriate here since for personal jurisdictional purposes, two circuits have stated that "[i]n trademark infringement actions, . . . the claim arises at the place of the 'passing off,' which is 'where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'" *Id.* at 1388 (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2nd Cir. 1956), cert. denied, 352 U.S. 871(1956); and citing *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976) ("It is undisputed that a cause of action for trademark infringement arises where the passing off occurs")). Other courts have concluded that "'[d]amage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the owner suffers the damage.'" *Id.* (quoting *Acrison, Inc. v. Control & Metering, Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)).

Thus, while the plaintiff in this case has not alleged that the defendant actually infringed on the plaintiff's trademark, and consequently there has been no real "passing off" as of yet, the court finds the reasoning of these other courts persuasive and applicable to the present circumstances. Just as some courts have found personal jurisdiction to be proper for a trademark infringement case in the state where the owner of the intellectual property suffers the damage, this court finds that personal jurisdiction is proper in Nebraska since Nebraska is the state where the plaintiff suffers the damage caused by the defendant's allegedly fraudulent filing of an opposition to the plaintiff's trademark application.[2]

---

[2] Additionally, the court notes that defendant's counsel, Mr. Brian Wunder, sent a number of settlement letters directly to the plaintiff's offices located in Omaha, Nebraska. Declaration of John P. Passarelli, Filing No. 25, Exhs. A and B. The court finds these letters provide further support for the conclusion that the defendant knew the brunt of the injury caused by its actions would be felt in the State of Nebraska.

11

Because the court finds that personal jurisdiction over the defendant is proper here in Nebraska, the court denies the defendant's 12(b)(2) motion to dismiss.

## II.     Improper Venue

In its motion to dismiss, the defendant also asserts that venue is not proper in Nebraska. In support of its argument, the defendant cites to 28 U.S.C. § 1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The defendant argues that none of the three factors can found in the circumstances of this case. Instead, the defendant contends that venue is proper in Virginia, since that is where the events that allegedly gave rise to the plaintiff's claims occurred. Filing No. 20 at 9.

The court, however, does not concur. As the court concluded above, because this is an action for fraudulent interference with the plaintiff's trademark application before the TTAB, the court finds that "'[d]amage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the owner suffers the damage.'" *Dakota*, 946 F.2d at 1388 (quoting *Acrison,* 730 F. Supp. at 1448). Because Buck's principal place of business is in Nebraska, Nebraska is the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b).

12

Further, the court finds that the convenience of the parties is better served in Nebraska. In Virginia, both parties and their witnesses would have to travel great distances for the purposes of litigation. Buck's, however, resides here in Nebraska, and thus in Nebraska only one party will have to travel for trial. The court finds that the convenience of the parties and judicial efficiency are best served by the litigation of this dispute in the district where the brunt of the alleged injury has taken place.

Accordingly, the court concludes that venue is proper in Nebraska pursuant to 28 U.S.C. § 1391(b), and the defendant's 12(b)(3) motion to dismiss is denied.

### III.     Failure to State a Claim upon Which Relief Can be Granted

The court also concludes that the defendant's 12(b)(6) motion to dismiss should be denied. Upon review of the complaint and the applicable law, the court finds that the plaintiff has pled sufficient facts to state its claims under Nebraska unfair competition laws and the Nebraska Uniform Deceptive Trade Practice Act.

The defendant contends that the plaintiff's first two causes of action under Nebraska law should be dismissed because in Nebraska, "[i]t is a well-established rule that libelous matter in a pleading which is relevant to, or has some reasonable relation to, the judicial proceeding in which it is filed is absolutely privileged." *Beckenhauer v. Predoehl*, 338 N.W.2d 618, 619 (Neb. 1983). In a case where a plaintiff attempted to sue a defendant for libel based on statements made during a previous judicial proceeding, "[t]he *Beckenhauer* court concluded that the defamatory material . . . was privileged." *Prokop v. Cannon*, 583 N.W.2d 51, 58 (Neb. Ct. App. 1998) (citations omitted). According to the defendant, the statements the defendant has made in its opposition before the TTAB are absolutely privileged and, consequently, the plaintiff's first two claims should fail.

13

Nebraska courts, however, have thus far declined to extend this privilege to apply to statements made during proceedings that are not judicial in nature.  See *Knight v. Knight*, 497 N.W.2d 692, 693 (Neb. Ct. App. 1992) (declining to apply the privilege where the proceeding at issue was not "a judicial proceeding, but an executive one.").  In the present case, the proceeding at issue could be construed as quasi-judicial in nature, but is more correctly categorized as an executive proceeding since the TTAB is an administrative tribunal of the USPTO, housed within the executive branch of the federal government.  *See* 15 U.S.C. § 1067(a).

Furthermore, there is no evidence that Nebraska courts have ever extended this privilege to preclude any cause of action *other* than causes of action that arise under libel, slander, and defamation.  *See,* e.g., *Beckenhauer*, 338 N.W.2d at 621 (holding that "the *defamatory material* . . . was privileged.") (emphasis added and citations omitted).  Defendant cites no cases where a Nebraska court has applied this privilege to extinguish a claim under common law unfair competition or the Nebraska Uniform Deceptive Trade Practice Act.  Instead, the Nebraska Supreme Court has only stated that the privilege "attaches to *defamatory* statements made incident to and in the course of a judicial proceeding if the *defamatory* matter has some relation to the proceeding." *Beckenhauer*, 338 N.W.2d at 620 (emphasis added).

Thus, with no clear guidance from the Nebraska courts setting a precedent for such an extension of the doctrine beyond cases based on defamation or libel, this court declines to conclude that the privilege should apply to the plaintiff's claims for unfair competition and deceptive trade practices.

The defendant also argues that the plaintiff's first two claims for relief should be dismissed because they are barred by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine, however, protects only "[t]hose who petition government for redress [by granting them immunity] from antitrust liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669 (1965)). When the United States Supreme Court first applied the *Noerr-Pennington* doctrine, the Court justified its creation by stating "that the Sherman Act does not punish 'political activity' through which 'the people . . . freely inform the government of their wishes.'" *Id.* (citing *Noerr*, 365 U.S. at 137). Thus, the "original formulation" of the *Noerr-Pennington* doctrine was one of "antitrust petitioning immunity." *Professional* at 57.

To date, the Supreme Court has not yet expanded this doctrine to apply to cases outside of antitrust law. Likewise, the Eighth Circuit Court of Appeals has only noted the absence of "authority which would extend the Noerr-Pennington doctrine from antitrust law" to apply to other cases. *Entergy Arkansas, Inc. v. Nebraska*, 358 F.3d 528, 552 n.19 (8th Cir. 2004). As no precedent exists to apply the doctrine to a case such as the case presently before the court, the court finds the defendant's argument for the application of the *Noerr-Pennington* doctrine to be without merit.

As a result, the court concludes that the defendant's 12(b)(6) motion should be denied.

**CONCLUSION**

For the reasons mentioned above, the court finds that the defendant's motion to dismiss should be denied. Accordingly,

IT IS ORDERED:

1. Defendant Buc-ee's motion to dismiss (Filing No. 19) is denied; and

2. Defendant Buc-ee's is ordered to file an answer to plaintiff Buck's complaint no later than twenty days from the date of this order.

DATED this 25th day of June, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge